# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MARCIANTA ABUDA,

    Plaintiff,

v.

CAL-WESTERN RECONVEYANCE CORPORATION, *et al.*,

    Defendants.

Case No. 2:11-CV-01823

**ORDER**

    Presently before the Court is the Motion for Summary Judgment of Defendant Wells Fargo N.A. ("Wells Fargo") (#32). Plaintiff filed a response in opposition (#48) to which Wells Fargo replied (#51).

    Also before the Court is the Motion to Dismiss of Defendant Cal-Western Reconveyance Corporation ("Cal-Western") (#24). Plaintiff filed a response in opposition (#29) to which Cal-Western replied (#44). Cal-Western also filed a joinder to Wells Fargo's Motion for Summary Judgment (#33).

    Also before the Court is Plaintiff's Motion for Certification (#23). Defendants Cal-Western and Wells Fargo filed responses in opposition (#27, #34) to which Plaintiff replied (#41, #40).

I. Background and Procedural History

Plaintiff purchased a property at 6158 Natural Slope Street, Las Vegas, Nevada (the "Property") on February 23, 2004. On April 9, 2005 Plaintiff entered into a Deed of Trust/Adjustable Rate Mortgage in the amount of $269,300. World Savings Bank, FSB was designated as the Lender and Beneficiary and Golden West Savings Association Service Company was designated as Trustee.

On or about December 31, 2007 World Savings Bank changed its name to Wachovia Mortgage, FSB. Effective November 1, 2009 Wachovia Mortgage, FSB merged with Wells Fargo and is now known as Wachovia Mortgage, a Division of Wells Fargo.

On July 9, 2010 Plaintiff filed for bankruptcy under Chapter 13 in the United States Bankruptcy Court for the District of Nevada, which was later converted to a Chapter 7 bankruptcy. On December 2, 2010 Plaintiff received her Order of Discharge.

On April 12, 2011 Cal-Western filed a Notice of Breach and Default and an Election to Cause Sale of Real Property under Plaintiff's Deed of Trust with the Clark County Recorder's Office. Two days later, on April 14, 2011, Wells Fargo filed a Substitution of Trustee, substituting Cal-Western as the Trustee under Plaintiff's Deed of Trust.

On May 31, 2011, Abuda recorded an Affidavit of Fact (the "Abuda Affidavit"), in which she unilaterally declares her mortgage null and void. Specifically, the Abuda Affidavit asserts that "[t]he monetary claims of approximately $173,000 (existing first mortgage loan) plus any and all accrued interests, are hereby deemed invalid, null, void and with no legal or lawful standing . . . ." The Abuda Affidavit further states that "the lender is placed on official notice that failing to respond in twenty (20) calendar days from the date herein shall result in the lender's and its assigns, default and, thus, shall be considered its acquiescence to the full Reconveyance of the subject property to Abuda." Additionally, the Abuda Affidavit purports to replace Cal-Western as Trustee with Sonia Rodis, a stranger to Wells Fargo. On June 22, 2011, another party, Alex Soria, recorded a Deed of Full Reconveyance (the "Reconveyance"), in which Soria, as "trustee," purported to fully reconvey, free of all encumbrances, legal title to the Property to Abuda.

2

On September 16, 2011 the Nevada Foreclosure Mediation Program filed a Certificate stating that the Beneficiary could proceed with the foreclosure because Plaintiff had not opted into the program. On September 22, 2011 Cal-Western filed a Notice of Trustee's Sale, setting a sale date of October 12, 2011. The Notice stated the amount due under Plaintiff's Deed of Trust/Note as $357,891.72.

On October 27, 2011 Plaintiff filed a complaint in the Nevada state court and Wells Fargo removed the action here.

II. Analysis

    A. Motion for Summary Judgment

        1. Legal Standard for Summary Judgment

Summary Judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by," citing to documents, electronically stored information, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. *Matsushita Elec. Indis. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. However, the nonmoving party may not rest upon mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F. 3d 337, 345 (9th Cir. 1995). "[U]ncorroborated and self-serving testimony," without more, will not

create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F. 3d 1054, 1061 (9th Cir. 2002).

### 2. Preemption of Claim under Home Owners' Loan Act

The Home Owner's Loan Act ("HOLA") enabled federal regulation of savings and loan associations in order to restore public confidence in these institutions after the Great Depression. *Bank of Am. v. The City and County of San Francisco,* 309 F.3d 551, 559 (9th Cir.2002). HOLA applies to the successors of federal savings banks, and Wells Fargo has been determined to be such a successor to World Savings Bank. *See, e.g., Haggarty v. Wells Fargo Bank, N.A.,* 2011 WL 445183, at *4 (N.D.Cal. Feb. 2, 2011) ("Where a national association, such as defendant, acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA.") (citation omitted); *DeLeon v. Wells Fargo Bank, N.A .,* 729 F.Supp.2d 1119, 1126 (N.D. Cal. June 9, 2010);

Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing federal savings associations through HOLA. 12 U.S.C. § 1464; *Silvas v. E*Trade Mortg. Corp.,* 514 F.3d 1001, 1005 (9th Cir.2008). OTS has promulgated regulations stating that OTS "occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. § 506.2(a). The Ninth Circuit has held that the implementing regulations set forth in section 560.2 are the framework that controls the determination of whether a state law claim is preempted by HOLA. *Silvas,* 514 F.3d at 1005. When determining if HOLA preempts the claim courts must first determine whether the state law under which the claim arises is one of the enumerated types of laws expressly preempted in section 560.2(b). *Id.* The enumerated types of law include "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F .R. § 560.2(b)(10). If the state law is one of these enumerated types then the "analysis will end there; the law is preempted." *Silvas,* 514 F.3d at 1005. If a state law is not listed, "state laws of general applicability, such as tort, contract, and real property laws, are preempted if their enforcement would impact thrifts in areas listed in § 560.2(b). Alternatively, such laws are preempted if they have more

than an incidental effect on the lending operations of a federal savings association." Rivera v. Wachovia Bank, 2009 WL 2406301, at *2 (S.D. Cal. 2009) (citing 12 C.F.R. §§ 560.2(c)).

The originator of the loan, World Savings Bank, was a federal chartered savings bank, organized and operating under HOLA. Wells Fargo is a successor to World Savings Bank. Defendants argue that HOLA preempts Plaintiff's claims because the allegations are based upon the ownership of the security interest and circumstances surrounding the processing and servicing of Plaintiff's mortgage. Courts in this circuit have repeatedly held that HOLA preempts claims based on failure to comply with state nonjudicial foreclosure statutes and other claims related to the ownership, servicing, and processing of a mortgage. *See, e.g., Stefan v. Wachovia*, 2009 WL 4730904, at *3 (N.D. Cal. Dec. 7, 2009) ("Plaintiff's claims of misconduct surrounding the foreclosure proceedings clearly fall under the preemption provision for 'processing, origination, sale or purchase of mortgages.'"); *Parcray v. Shea Mortg. Inc.*, 2010 WL 1659369, at *8. (E.D. Cal. Apr. 23, 2010); *Odin,a v. Aurora Loan Serv.*, No. C-09-4674-EDL, 2010 WL 1199886, at *8 (N.D. Cal. Mar. 23, 2010). Plaintiff's claims arising out of the ownership, servicing, and processing of the loan either fall within the enumerated types of laws expressly preempted in section 560.2(b) or would have a more than incidental impact in those areas. Plaintiff's claims in the Complaint are all based on ownership, servicing, and processing of the loan and are preempted by HOLA. Even if these claims were not preempted by HOLA, they would still fail as explained *supra.*

3. Authority to Foreclose

Plaintiff asserts that a dispute of fact exists as to whether Wells Fargo lacks the authority to foreclose because it is "a stranger to the transaction." The Deed of Trust identifies both the "beneficiary" and "lender" as World Savings Bank, FSB. As noted previously, Wells Fargo is the successor to World Savings Bank. *Haggarty*, 2011 WL 445182, at *4. Wells Fargo holds whatever interest World Savings Bank held and Plaintiff's claim that Wells Fargo lacked authority to foreclose is without merit. In her opposition, Plaintiff also makes a claim regarding the securitization of the mortgage. However, Wells Fargo denies that the loan was ever securitized and has provided a copy

of the original Note identifying the Lender as World Savings Bank and "its successors and/or assignees." Plaintiff has provided no evidence that the loan was ever securitized. There is no dispute of fact that Wells Fargo has authority to foreclose and summary judgment is granted on Plaintiff's claims based on lack of authority to foreclose. Specifically summary judgment is granted as to the claims for ongoing fraudulent foreclosure, interference with contractual relationship, slander of title, and "per se violation of unfair and deceptive trade practices" since these claims are based on the premise that Wells Fargo is not the note holder and lacks the authority to foreclose on the Property.

### 4. Failure to Comply with NRS 107.080

The procedure for conducting a trustee's foreclosure sale in Nevada is set forth in NRS 107.080 *et seq.* The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. NRS § 107.080(3). After the notice of default is recorded, the grantor has 35 days or, in the case of owner-occupied housing, up to 5 days before the foreclosure sale, in which to cure the deficiency in payment. Three months after recording the notice of default, a foreclosure sale may be conducted. NRS § 107.080(2)(d). However, the trustee must first give notice of the time and place of the sale. NRS § 107.080(4). At the appointed time and place, a sale is conducted, monies are bid, and a trustee's deed is issued. NRS. § 107.080 *et seq.* requires that parties "substantially comply" with the statute incident to conducting foreclosure sales or the sale will be invalid.

As an initial matter, Plaintiff argues that foreclosing parties are required to strictly comply with the procedures of NRS §107 *et. seq.* Plaintiff cites *Levya v. National Default Servicing Corp.* 255 P.3d 1275, 1279 (Nev. 2011), where the Supreme Court of Nevada held that the Nevada Mediation Program requires strict compliance to NRS § 107.086. However, the Supreme Court of Nevada has declined to extend *Levya* outside the context of the Nevada Mediation Program. *See Thomas v. BAC Home Loans Servicing, LP.*, 2011 WL 6743044, at *4 (Nev., Dec. 20, 2011) (strict compliance provisions apply only to proceedings in the Nevada Foreclosure Mediation Program). NRS §107.080 *et. seq.* only requires substantial compliance. *See Hampton v. Countrywide Home*

6

*Loans, Inc.*, 2011 WL 1792743, 3 (D.Nev.2011) (finding substantial compliance with N.R.S. § 107.080 *et. seq.* sufficient to dismiss challenge to trustee's sale). There is no dispute of fact that Wells Fargo has substantially complied with NRS § 107.080 *et seq.* as explained *supra*.

### i. NRS § 107.080

Plaintiff alleges that Defendants violated NRS § 107.080 because only "the beneficiary, the successor in interest of the beneficiary or the trustee" may initiate the nonjudicial foreclosure process and, according to Plaintff, Wells Fargo is none of these. As discussed *supra*, Wells Fargo was the true Note holder and had the authority to foreclose. It is also undisputed that Cal-Western was acting as an agent for, and with authority from Wells Fargo. There is no dispute of fact that Defendants had authority to initiate foreclosure under NRS § 107.080. Accordingly, summary judgment is granted in favor of Defendants on this claim.

### ii. NRS § 107.080(2)(b) and 3(a)

Plaintiff alleges Defendants violated NRS § 107.080(2)(b) and 3(a) by not adequately describing the deficiency in performance and the period to cure/reinstate the mortgage, and by stating the incorrect amount borrowed in the Notice of Default and Election to Sell.

NRS 107.080(3) states that "[t]he notice of default and election to sell must: (a) Describe the deficiency in performance or payment and may contain a notice of intent to declare the entire unpaid balance." The statute states that the notice, "<u>may</u> contain a notice of intent to declare the entire unpaid balance." NRS 107.080(3)(a) (emphasis added).  Such a notice is not required.

There is no dispute of fact that the Notice of Default adequately described the deficiency in payment, and also provided a phone number for Plaintiff to call "to determine if reinstatement is possible and the amount, if any, necessary to cure the default." Further, Wells Fargo has provided evidence that the amount stated in the Notice of Default was correct. Even if it was incorrect, since a declaration of the unpaid balance is not required, an error in stating this amount does not render the Notice of Default defective. Accordingly, there is no dispute of fact that Defendants substantially

complied with this requirement and summary judgment on this claim is granted in favor of Defendants.

### iii. NRS § 107.085(4) and 2(b)

Plaintiff alleges that Defendants violated NRS §107.085(4) by not providing her with a copy of the Note and NRS §107.080(2)(b) by not providing mediation forms so that the Plaintiff could elect or decline to attend mediation. Cal-Western has provided the affidavit of Edwardo Silva stating that he mailed the Note and mediation forms to Plaintiff as required by NRS § 107.080. Plaintiff has failed to provide any evidence to the contrary.[1] There is no dispute of fact that the notice forms were mailed to Plaintiff. Accordingly, Plaintiff's claims based on this section fail.

### iv. Authority to Record Notice of Default

Plaintiff alleges Cal-Western could not record the Notice of Default even if Wells Fargo was the note holder because at the time the Notice of Default was recorded, Cal-Western had not yet been substituted as trustee. Nevada law does not require a substitution of trustee be recorded prior to a notice of default, since an authorized agent can record notice of default. *See Berilio v. HSBC Mortg. Corp.*, 2010 WL 2667218 (D. Nev. 2010). Shortly after the Notice of Default was recorded, Cal-Western was duly substituted as Trustee under Plaintiff's Deed of Trust. Accordingly, there is no dispute of fact that Cal-Western has legal authority to record the Notice of Default on the Property and summary judgment is granted in favor of Defendant.

### 5. Counterclaim for Declaratory Relief

Wells Fargo filed a counterclaim seeking an order declaring that Abuda improperly recorded the Abuda Affidavit and Reconveyance and expunging both from title. Declaratory relief is available if: "(1) a justiciable controversy exists between persons with adverse interests, (2) the party seeking declaratory relief has a legally protectable interest in the controversy, and (3) the issue is ripe for

---

[1] Cal-Western initially filed a motion to dismiss and later filed a joinder to Wells Fargo's Motion for Summary Judgment. By submitting an affidavit, Cal-Western has converted its motion to dismiss this claim to a motion for summary judgment. Fed. R. Civ. P. 12(d). Accordingly, the Court analyzes the evidence in light of Fed. R. Civ. P. 56(a).

judicial determination." *County of Clark, ex rel. Univ. Med. Ctr. v. Upchurch*, 961 P.2d 754, 756, 114 Nev. 749, 752 (1998) (citing to *Knittle v. Progressive Casualty Ins. Co.*, 908 P.2d 724, 725, 112 Nev. 8, 10 (1996)). When considering if an action is ripe for judicial determination, a court must "consider whether speedy resolution of the issue might promote economy in the litigation process or might lead to meaningful pretrial settlement." *County of Clark,* 961 P.2d at 756, 114 Nev. at 752 (citing *El Capitan Club v. Fireman's Fund Ins.*, 506 P.2d 426, 429, 89 Nev. 65, 70 (1973)).

Wells Fargo argues that Plaintiff improperly recorded the Abuda Affidavit in which she unilaterally claims, *inter alia*, that Wells Fargo's Deed of Trust is null and void. Wells Fargo also claims that Abuda improperly recorded the Reconveyance, in which she purports to reconvey, without authority, the Property to herself free of all liens and encumbrances. Wells Fargo argues that it has a legally protectable interest in the controversy, and the issue is ripe for determination. Plaintiff has not provided any opposition to Wells Fargo's Motion for Summary Judgment on this counterclaim. *See* Local Rule 7-2. Accordingly, summary judgment on the claim for declaratory relief is granted in favor of Wells Fargo. Wells Fargo is directed to file a proposed order on the claim for declaratory relief within 10 days of the date of this order.

### B. Motion for Certification

The Nevada Supreme Court may answer questions of law certified to it by a United States District Court if questions of Nevada law are involved "which may be determinative of the cause then pending in the certifying court" and "there is no controlling precedent in the decisions of the Supreme Court of [Nevada]." Nev. R. App. Pro. 5(a). A question should only be certified where the certified question "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of [Nevada]."Nev. R. App. Pro. 5(a). Because the Court has granted Defendants' motions, the Motion for Certification is moot.

9

### C. Declaratory and Injunctive Relief

Declaratory and injunctive relief is not a separate cause of action or an independent ground for relief. *See In re Wal-Mart Wage & Hour Employ. Practices Litig.*, 490 F.Supp.2d 1091, 1130 (D.Nev.2007). Plaintiff has failed to state any claim for which declaratory and injunctive relief could be granted or pled facts showing that Plaintiff is entitled to such relief. Accordingly, the request for declaratory and injunctive relief is denied.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment of Defendant Wells Fargo, (#32) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** Summary Judgment on Wells Fargo's Counterclaim for Declaratory Relief is **GRANTED** in favor of Wells Fargo and Wells Fargo is directed to file a proposed order on the claim for declaratory relief within 10 days of the date of this order.

**IT IS HEREBY ORDERED** that The Motion to Dismiss of Defendant, Cal-Western, (#24) is **GRANTED**.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Certification (#23) is **DENIED**.

DATED this 18th day of June 2012.

_____
Kent J. Dawson
United States District Judge